## Morrow et al. v. Springfield Township

*DeFuria, Larkin & DeFuria,* for plaintiffs.
*Rocap & Rocap,* for defendant.

SWENEY, P. J., April 15, 1954.—These are two appeals by owners and operators of stone quarries in Springfield Township from Springfield Township Ordinance No. 477, enacted July 14, 1953, effective July 28, 1953, and seeking to regulate the manufacture, storage and transportation of explosives, the carrying on of blasting operations and requiring the fencing of quarries and other excavations, requiring permits and bonds and imposing penalties for violation.

Pursuant to the First Class Township Law of June 24 1931, P. L. 1206, 53 PS §19092-1502, plaintiffs filed their complaint to test the legality of the ordinance on August 27, 1953. Testimony and argument having been presented by both sides together with briefs, the matter is now before the court for decision.

The ordinance in question sets forth, inter alia, in article I, definitions; in article II, provisions for permits and facilities for storing explosives. The manufacture of explosives is prohibited. Section 205 provides, in part:

"All explosives must be stored in a magazine or other building located, constructed and maintained in accordance with the Regulations for the 'Storage, Handling and Use of Explosives' issued by the Pennsylvania Department of Labor and Industry."

The "Regulations for the Storage, Handling and use of Explosives" issued by the Department of Labor

and Industry under the Act of July 1, 1937, P. L. 2681, as amended, 73 PS §151, were offered in evidence at the trial.

Article III of the ordinance before us regulates the transportation of explosives. Article IV prohibits blasting operations, unless a permit is first secured from the board of commissioners. There is provision for a permit fee of $5 for 10 days or for a quarterly permit of $10 per month. The assignment of an inspector of blasting is also provided. Section 404 provides, in part:

"All blasting operations shall be so conducted as not to endanger the health, safety and welfare of persons, and the safety of property . . . and shall be carried on in accordance with the 'Regulations for the Storage, Handling and Use of Explosives' and the 'Regulations for Pits and Quarries,' issued by the Pennsylvania Department of Labor and Industry."

The "Regulations for Pits and Quarries", issued by the Pennsylvania Department of Labor and Industry, pursuant to the Act of May 18, 1937, P. L. 654, as amended, 43 PS §25, were introduced into evidence at the trial of this case.

Article V of the ordinance before us provides for the filing of a bond or certificate of insurance, the building of fences about quarries, under certain circumstances, the erecting of signs, and providing for appeals, severability and penalties.

An examination of the State regulations referred to discloses detailed directions for the storage, handling and use of explosives in quarries, with penalties for violation. It should be noted that the "Regulations for the Storage, Handling and Use of Explosives", under the Act of 1937, supra, are not applicable to the "operation of stone or rock quarries", except insofar as the regulations for the construction of magazines

are incorporated by reference into the "Regulations for Pits and Quarries".

Appellants contend that the ordinance here is invalid in that it attempts regulation in a field already well and sufficiently covered by State regulation; that this attempted regulation by the township is based on State regulations. With this contention we agree. An examination of the State regulations shows ample regulation of explosives. The State Vehicle Code of May 1, 1929, P. L. 905, provides (section 822, 75 PS §409) that the word "EXPLOSIVE" shall be *marked or placarded* on both sides and the rear in letters three inches high, or a red "Danger" flag on the rear of the vehicle. Penalties for violation are provided. Under the law of Pennsylvania, life and property are protected, for we impose absolute liability on anyone causing damage as a result of blasting operations. This rule follows the A. L. I. Restatement of the Law of Torts, §519, and permits recovery without a showing of negligence, whether the damage is direct or consequential: Federoff et ux. v. Harrison Construction Co., 362 Pa. 181; Laventhol v. A. DiSandro Contracting Company, 173 Pa. Superior Ct. 522.

Where the Commonwealth has preëmpted the regulation of a particular industry, operation or occupation, a local municipality may not impose the same or similar regulations. In Commonwealth v. Dickey, 115 Pa. Superior Ct. 164, the court said, at page 169:

"The Department of Health having promulgated a rule or regulation covering the subject matter of the Ordinance relating to the depth of graves, the borough was powerless to require certificates of inspection relating to the matters already provided for by the Department of Health. *Within its sphere*, the Department of Health has control of the health of the State and the Borough authorities are without power to

impose restrictions and limitations on such subjects as the Department of Health has already covered by its own rules and regulations. Under the guise of a certificate of inspection, the Borough authorities are not authorized to impose regulations and demand fees in reference to powers that have been delegated to and have been exercised by the general health body of the State."

"It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a State Statute: Bussone v. Blatchford, 164 Pa. Superior Ct. 545": Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374. See also, Devlin v. City of Wilkes-Barre, 69 D. C. 99; Girard Trust Company et al. v. Philadelphia et al., 336 Pa. 433.

We can find no purely local problem which would require the Township of Springfield to further and more fully regulate the use, transportation and storage of explosives or the blasting, where explosives must be used. The township, of course, has the right to prohibit the manufacture of explosives within the township limits and to this extent section 200 of article II is valid, but we must hold all the rest of the first four sections invalid.

As to the fifth article, unguarded and abandoned quarries have taken an appalling and increasing toll among the young children of this county in the past few years. This is particularly true where worked out or abandoned quarries are concerned. They hold a fatal attraction for children and the quarries should be filled in or protected by an adequate fence. Section 501 provides that "where any quarry or other excavation in excess of twelve (12) feet in depth at the deepest point is located adjacent to or within five hundred (500) feet of a highway, school, church, park, playground or dwelling, or when water in excess of three

(3) feet in depth at the deepest point is permitted to accumulate and remain in any quarry or other excavation for a period of forty-eight (48) hours, a protective fence at least six (6) feet in height shall be placed around such portions of the rim of the quarry or excavation as may constitute a hazard to the life or safety of persons."

This section further provides for signs and notice by the commissioners to the owners when and where fences are to be erected.

We believe that this is a reasonable exercise of the police power by the commissioners under section 1502 of the Township Code (53 PS §19092-1502X) which provides: "Public Safety. To take all needful means for securing the safety of persons or property within the township." This provision constitutes a grant of broad powers.

"Of course, any restriction imposed by such ordiance on the use of property must be reasonably conducive to the safety, health, morals or general welfare of the public, for the exercise of the police power is always subject to judicial review and a law based upon it must not be patently beyond the necessities of the case but must bear some rational relation to the end to be attained": Adams v. New Kensington, 357 Pa. 557.

### Decree

And now, April 15, 1954, it is ordered and decreed that the appeal of Eleanor B. Morrow, owner, and William M. Cadman, trading as Morrow Quarries, tenant, be and the same is sustained as to sections 201, 202, 203, 204, 205, 300, 301, 302, 303, 400, 401, 402, 403, 404, 405, 406, 407, and 500, of Ordinance No. 477 of the Township of Springfield, enacted July 14, 1953, which sections are declared to be illegal, invalid and void; that the appeal is dismissed as to sections 200 and 501, which sections are declared to be legal and

valid; each party shall pay his own costs; an exception is noted for each party to this action of the court; it is further ordered and decreed that this opinion is to be filed in the case of Morrow et al v. Springfield Township, but shall be determinative of both cases involved herein.